1  BRENT H. BLAKELY (SBN 157292)
   bblakely@blakelylawgroup.com
2  JAMIE FOUNTAIN (SBN 316567)
   jfountain@blakelylawgroup.com
3  BLAKELY LAW GROUP
4  1108 Manhattan Avenue, Suite B
   Manhattan Beach, California 90266
5  Telephone: (310) 546-7400
6  Facsimile: (310) 546-7401
7  **Attorneys for Plaintiff**
   **Deckers Outdoor Corporation**
8

9                    **UNITED STATES DISTRICT COURT**
10
                     **CENTRAL DISTRICT OF CALIFORNIA**
11

12  DECKERS OUTDOOR                    **COMPLAINT FOR DAMAGES
    CORPORATION, a Delaware           AND EQUITABLE RELIEF:**
13  Corporation,
                                       1. **TRADE DRESS
14                        Plaintiff;      INFRINGEMENT UNDER THE
                                          LANHAM ACT (CLAIMS 1-4)**
15          v.
                                       2. **TRADE DRESS
16  PROJECT CLOUD LLC, a California       INFRINGEMENT UNDER
    Company; KC EXOTIC RENTAL,            CALIFORNIA COMMON LAW
17  INC., a California Corporation, and    (CLAIM 5)**
    DOES 1-10, inclusive,
18                                     3. **UNFAIR COMPETITION IN
                          Defendants.     VIOLATION OF CAL. BUS. &
19                                        PROF. CODE § 17200 *et seq.*
                                          (CLAIM 6)**
20
                                       4. **UNFAIR COMPETITION
21                                        UNDER CALIFORNIA
                                          COMMON LAW (CLAIM 7)**
22
                                       5. **PATENT INFRINGEMENT
23                                        (CLAIMS 8 & 9)**

24                                     **JURY TRIAL DEMANDED**
25

26      Plaintiff Deckers Outdoor Corporation ("Deckers" or "Plaintiff") for its

27  Complaint against defendants Project Cloud LLC ("Project Cloud"), KC Exotic Rental,

28  Inc. ("Exotic Rental"), and DOES 1-10 (collectively, "Defendants") alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises out of Defendants' complicit and unlawful acts constituting trade dress infringement and unfair competition in violation of the Lanham Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq.* and violations of statutory and common law of the state of California.

2.      This Court has subject matter jurisdiction over the federal claims asserted in this action under 28 U.S.C. §§ 1331 and 1338(a) and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

3.      This Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in this district, placed infringing products in the stream of commerce directed to residents of this district, derived commercial benefits from the sale of infringing products and caused injuries to Plaintiff within the Central District of California.

4.      Venue is proper under 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district and Plaintiff is located and has been injured in this judicial district, and 28 U.S.C. § 1400(b) because Defendants committed acts of infringement in this judicial district.

## THE PARTIES

5.      Plaintiff Deckers is a corporation organized and existing under the laws of the state of Delaware with an office and principal place of business located in Goleta, California.  Deckers designs and markets footwear products under a number of well-known brands, including UGG® products covered by the intellectual property asserted in this Complaint.

6.      Upon information and belief, Defendant Project Cloud, LLC, ("Project Cloud,") is a company organized and existing under the laws of the state of California

with an office and principal place of business located at 15790 Terminal Court, Chino, California 91708.

7.    Upon information and belief, Defendant KC Exotic Rental, Inc, ("Exotic Rental,") is a corporation organized and existing under the laws of the state of California with an office and principal place of business located at 4925 Dartmouth Drive Yorba Linda, California 92886.

8.    Deckers is informed and believes that, together with Project Cloud and Exotic Rental, other individuals and entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each one (including these named Defendants) was the agent and servant of the others and acting within the course and scope of said agency and employment. These other individuals and entities are sued under fictitious names DOES 1-10 because their true names and capacities are currently unknown to Deckers. Deckers will seek leave to amend this Complaint when the true names and capacities of DOES 1-10 are ascertained.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A.    Deckers' UGG® Brand

9.    Deckers has been engaged in the design, distribution, marketing, offering for sale, and sale of footwear since 1975.  Deckers owns and markets its footwear products under several distinctive trademarked brands, including UGG®, Teva®, HOKA®, and AHNU®.

10.    Deckers' UGG® brand is one of the most well-recognized premium comfort-leisure shoe brands in the United States.  Since 1979, when the UGG® brand was founded, the popularity of UGG® footwear has steadily grown in the U.S. and around the world.  UGG® footwear has been and remains highly coveted today by consumers as one of the most popular and recognizable symbols of luxury and style.

11.    For example, in 2000, UGG® boots were featured on Oprah's Favorite Things® where Oprah emphatically declared on national television how much she

"LOOOOOVES her UGG boots." Since then, the popularity of UGG® footwear has grown exponentially, with celebrities, such as Hailey Bieber, Kendall Jenner, Emily Ratajkowski, and Megan Fox, among a myriad of others regularly seen wearing UGG® footwear, including the UGG® Classic Ultra Mini, the UGG® Tasman, the UGG® Tazz, and the UGG® Neumel.

12.    The world-wide recognition as a "premium" brand and the overwhelming popularity of the UGG® brand is due to Deckers' continuous commitment to quality and excellence. Today, Deckers' footwear products under the UGG® brand are widely available and sold to consumers in every state, including California, through authorized retailers on the internet and brick-and-mortar stores, and in UGG® Stores and at www.ugg.com.

**B.    Defendants' Infringing Activities**

13.    This lawsuit arises from Defendants' design, manufacture, importation, distribution, advertisement, marketing, offering for sale, and sale in the U.S. of certain footwear products that infringe upon Deckers' Classic Ultra Mini Trade Dress, the Tasman Trade Dress, Tazz Trade Dress, Neumel Trade Dress; U.S. Pat. No. D927,161 (the "'161 Patent"), and U.S. Pat. No. D790,186 (the "'186 Patent") (collectively, the "Accused Products").

14.    Upon information and belief, Defendants are engaged in the retail sale of a wide range of apparel through its website projectcloudshoes.com that is accessible to customers nationwide, including to those within this judicial district.

15.    Upon information and belief, Defendants are competitors of Deckers and introduced the Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Classic Ultra Mini, UGG® Tasman, UGG® Tazz, and UGG® Neumel.

16.    Deckers has not granted Defendants a license to practice nor given Defendant any form of permission to use Deckers' trademarks, trade dresses, or patents, including the Classic Ultra Mini Trade Dress, Tasman Trade Dress, Tazz Trade Dress,

Neumel Trade Dress, and '161 Patent, and '186 Patent.

### i. Defendants' Infringement of the Classic Ultra Mini Trade Dress and U.S. Patent No. D927,161

17.     Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Project Cloud brand "Hippy," and "Huggy" through at least Defendants' website (projectcloudshoes.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Accused Products below:

| Accused Product – Project Cloud® Hippy | UGG® Classic Ultra Mini | '161 Patent |
|---|---|---|
|  |  |  |
| Accused Product – Project Cloud® Huggy | UGG® Classic Ultra Mini | '161 Patent |
|  |  |  |

### ii.    Defendants' Infringement of the Tasman Trade Dress

18.     Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Project Cloud brand "Nerita," "Relaxation," and "Dreamwarm" through at least Defendants' website (projectcloudshoes.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Accused

Products below:

**Accused Product – Project Cloud® Nerita**



**UGG® Tasman**



**Accused Product – Project Cloud® Relaxation**



**UGG® Tasman**



**Accused Product – Project Cloud® Dreamwarm**



**UGG® Tasman**



### iii.    Defendants' Infringement of the Tazz Trade Dress

19.    Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Project Cloud brand "Sayre" through at least Defendants' website (projectcloudshoes.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Accused Products below:

**Accused Product – Project Cloud® Sayre**          **UGG® Tazz**

     

#### iv.    Defendants' Infringement of the Neumel Trade Dress

20.    Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Project Cloud brand "Julee" through at least Defendants' website (projectcloudshoes.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Accused Products below:

**Accused Product – Project Cloud® Julee**          **UGG® Neumel**

     


#### v.    Defendants' Infringement of the D790,186

21.    Upon information and belief, Defendants imported into the U.S., advertised, marketed, offered for sale, and/or sold at least the Accused Products identified by name as Project Cloud brand "Timmy Mini" through at least Defendants' website (projectcloudshoes.com) to consumers nationwide, including consumers located within this judicial district. Exemplars of the Accused Products below:

**Accused Product – Project Cloud® Timmy**

**Mini**

**'186 Patent**





22.    Upon information and belief, Defendants may have sold additional products that infringe upon Deckers' design patents and trade dresses. Deckers will seek leave to amend as additional information becomes available through discovery.

23.    Upon information and belief, Defendants acted in bad faith and Defendants' unlawful acts have misled and confused, and were intended to cause confusion, or to cause mistake, or to deceive consumers as to the affiliation, connection, or association of the Accused Products with Deckers, and/or the origin, sponsorship, or approval of the Accused Products by Deckers.

## FIRST CLAIM FOR RELIEF

### (Trade Dress Infringement of Classic Ultra Mini Trade Dress – 15 U.S.C. § 1125(a))

24.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

25.    In 2020, Deckers introduced the UGG® Classic Ultra Mini, marketed and featuring the design elements protected under the "Classic Ultra Mini Trade Dress." The Classic Ultra Mini Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

    a.    An ankle-high boot;

    b.    Classic suede boot styling;

    c.    An exaggerated, raised and exposed circular stitch pattern;

d.    Exposed tufting;

e.    A raised and rounded vamp;

f.    A suede heel overlay on the boots exterior;

g.    Fabric binding along the top of the boot and along the sole;

h.    A thick, flat sole; and

i.    A top line that is higher in the front and lower in the back.

26.    The Classic Ultra Mini Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry; examples of its distinctive appearance as a whole are shown in the photographs below:



27.    The design of the Classic Ultra Mini Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe.  There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Classic Ultra Mini Trade Dress. The combination of features comprising the Classic Ultra Mini Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress, as a distinct product originating solely from Deckers.

28.    The UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress, is one of the most well-recognized and commercially successful styles of

UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Classic Ultra Mini has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Classic Ultra Mini and graced the pages of many popular magazines nationwide and internationally.

29.    Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Classic Ultra Mini Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Classic Ultra Mini Trade Dress.

30.    Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Classic Ultra Mini Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.  Indeed, Deckers has sold millions of dollars' worth of UGG® Classic Ultra Mini boots, the embodiment of the Classic Ultra Mini Trade Dress. Accordingly, the Classic Ultra Mini Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

31.    Upon information and belief, Defendants are competitors of Deckers and Defendants introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Classic Ultra Mini.

32.    The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Classic Ultra Mini Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Deckers of the Accused Products.

33.    Defendants' use of the Classic Ultra Mini Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property.  There are numerous other shoe designs in the footwear industry,

none of which necessitate copying or imitating the Classic Ultra Mini Trade Dress.

34.     Defendants' use of the Classic Ultra Mini Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

35.     As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts.

36.     Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement, which is ongoing.   Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Classic Ultra Mini Trade Dress, or any designs confusingly similar thereto.

## SECOND CLAIM FOR RELIEF

### (Trade Dress Infringement of Tasman Trade Dress – 15 U.S.C. § 1125(a))

37.     Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

38.     For more than 20 years Deckers has sold the UGG® Tasman, marketed and featuring the design elements protected under the "Tasman Trade Dress." The Tasman Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

            a.     An embroidered braid around the opening of the upper;

            b.     A raised prominent seam on the front part of the upper running longitudinally down the center of the upper;

            c.     A raised and rounded dome shaped toe;

            d.     Brushed suede-like exterior; and

e.    A thick, flat outsole.

39.    The Tasman Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear industry; examples of its distinctive appearance as a whole are shown in the photographs below:

 

40.    The design of the Tasman Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe.  There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tasman Trade Dress. The combination of features comprising the Tasman Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tasman, the embodiment of the Tasman Trade Dress, as a distinct product originating solely from Deckers.

41.    The UGG® Tasman, the embodiment of the Tasman Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tasman has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing the UGG® Tasman and graced the pages of many popular magazines nationwide and internationally.

42. Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tasman Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tasman Trade Dress.

43. Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tasman Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of UGG® Tasman, the embodiment of the Tasman Trade Dress. Accordingly, the Tasman Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

44. Upon information and belief, Defendants are competitors of Deckers and Defendants introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tasman.

45. The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Tasman Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship, or approval by Deckers of the Accused Products.

46. Defendants' use of the Tasman Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property. There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Tasman Trade Dress.

47. Defendants' use of the Tasman Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

48. As a direct and proximate result of the foregoing acts, Deckers has suffered

1    and will continue to suffer significant injuries in an amount to be determined at trial.

2    Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained

3    and will sustain, and all gains, profits and advantages obtained by Defendants as a result

4    of their infringing acts.

5         49.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court,

6    there is no adequate remedy at law that can fully compensate Deckers for the harm

7    caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is

8    entitled to injunctive relief prohibiting Defendants from continuing to infringe the

9    Tasman Trade Dress, or any designs confusingly similar thereto

10                        **THIRD CLAIM FOR RELIEF**

11        **(Trade Dress Infringement of Tazz Trade Dress – 15 U.S.C. § 1125(a))**

12        50.    Deckers incorporates by reference each and every one of the preceding

13    paragraphs as though fully set forth herein.

14        51.    In 2021 Deckers introduced the UGG® Tazz, marketed and featuring the

15    design elements protected under the "Tazz Trade Dress." The Tazz Trade Dress is

16    unique and inherently distinctive, and comprised of the following non-functional

17    elements:

18            a.    An embroidered braid around the opening of the upper;

19            b.    A raised prominent seam on the front part of the upper running

20        longitudinally down the center of the upper;

21            c.    A raised and rounded dome shaped toe;

22            d.    Brushed suede-like exterior; and

23            e.    A thick, platform outsole.

24        52.    The Tazz Trade Dress, which is a composite of the above-referenced

25    features, is non-functional in its entirety, visually distinctive, and unique in the footwear

26    industry; examples of its distinctive appearance as a whole are shown in the photographs

27    below:

28

 

53.     The design of the Tazz Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe.  There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Tazz Trade Dress. The combination of features comprising the Tazz Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render the UGG® Tazz, the embodiment of the Tazz Trade Dress, as a distinct product originating solely from Deckers.

54.     The UGG® Tazz, the embodiment of the Tazz Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. The UGG® Tazz has received a large volume of unsolicited media attention, for example, through various celebrities seen wearing UGG® Tazz and graced the pages of many popular magazines nationwide and internationally.

55.     Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Tazz Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Tazz Trade Dress.

56.     Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Tazz Trade Dress has achieved widespread acceptance

and recognition among the consuming public and trade throughout the United States. Indeed, Deckers has sold millions of dollars' worth of the UGG® Tazz, the embodiment of the Tazz Trade Dress. Accordingly, the Tazz Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

57.     Upon information and belief, Defendants are competitors of Deckers and introduced the Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Tazz.

58.     The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Tazz Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

59.     Defendants' use of the Tazz Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property.  There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Tazz Trade Dress.

60.     Defendants' use of the Tazz Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products is produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

61.     As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants because of their infringing acts.

62.     Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is

entitled to injunctive relief prohibiting Defendants from continuing to infringe the Tazz Trade Dress, or any designs confusingly similar thereto.

## FOURTH CLAIM FOR RELIEF

**(Trade Dress Infringement of Neumel Trade Dress – 15 U.S.C. § 1125(a))**

63.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

64.    In 2011, Deckers introduced the UGG® Neumel boot, marketed and featuring the design elements protected under the "Neumel Trade Dress." The Neumel Trade Dress is unique and inherently distinctive, and comprised of the following non-functional elements:

a.  an ankle-high boot with open lacing;

b.  an upper with a suede or brushed suede-like appearance;

c.  a flat outsole;

d.  an exposed mudguard on the portion of the upper immediately above the outsole around the perimeter of the boot;

e.  fabric binding immediately above the exposed mudguard around the perimeter of the boot;

f.  two quarters sewn on top of a vamp, each quarter having an eyelet section with three lacing eyelets and forming the opening for the lacing;

g.  fabric binding around the topline of the boot shaft (or collar) extending through the top of each eyelet section and the front edges of the two quarters down to the outsole;

h.  A suede heel overlay on the boots exterior; and

i.  exposed wool or shearling lining on the tongue and around the topline of the boot shaft (or collar).

65.    The Neumel Trade Dress, which is a composite of the above-referenced features, is non-functional in its entirety, visually distinctive, and unique in the footwear

1  industry; examples of its distinctive appearance as a whole are shown in the photographs
2  below:

 

66.    The design of the Neumel Trade Dress is neither essential to its use or purpose, nor does it affect the cost or quality of the shoe.  There are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the Neumel Trade Dress. The combination of features comprising the Neumel Trade Dress provides no cost advantages to the manufacturer or utilitarian advantages to the consumer. These features, in combination, serve only to render UGG® Neumel boots, the embodiment of the Neumel Trade Dress, as a distinct product originating solely from Deckers.

67.    UGG® Neumel boots, the embodiment of the Neumel Trade Dress, is one of the most well-recognized and commercially successful styles of UGG® brand of footwear products, having been featured in many of Deckers' advertising and promotional materials as well as in various trade publications. UGG® Neumel boots have received a large volume of unsolicited media attention, for example, through various celebrities seen wearing UGG® Neumel boots and graced the pages of many popular magazines nationwide and internationally.

68.    Deckers has spent substantial time, effort, and money in designing, developing, advertising, promoting, and marketing the UGG® brand and its line of footwear embodying the Neumel Trade Dress. Deckers spends millions of dollars annually on advertising of UGG® products, including footwear embodying the Neumel

Trade Dress.

69.     Due to its long use, extensive sales, and significant advertising and promotional activities, Deckers' Neumel Trade Dress has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.  Indeed, Deckers has sold millions of dollars' worth of UGG® Neumel boots, the embodiment of the Neumel Trade Dress. Accordingly, the Neumel Trade Dress has achieved a high degree of consumer recognition and secondary meaning, which serves to identify Deckers as the exclusive source of footwear featuring said trade dress.

70.     Upon information and belief, Defendants are competitors of Deckers and Defendants introduced Accused Products into the stream of commerce in an effort to exploit Deckers' goodwill and the reputation of the UGG® Neumel boots.

71.     The Accused Products manufactured, imported, distributed, advertised, offered for sale, and/or sold by Defendants bear confusingly similar reproductions of the Neumel Trade Dress, such as to cause a likelihood of confusion as to the source, sponsorship or approval by Deckers of the Accused Products.

72.     Defendants' use of the Neumel Trade Dress is without Deckers' permission or authorization, and in total disregard of Deckers' rights to control its intellectual property.  There are numerous other shoe designs in the footwear industry, none of which necessitate copying or imitating the Neumel Trade Dress.

73.     Defendants' use of the Neumel Trade Dress is likely to lead to and result in confusion, mistake, or deception, and is likely to cause the public to believe that Accused Products are produced, sponsored, authorized, or licensed by or are otherwise connected or affiliated with Deckers.

74.     As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result

1    of its infringing acts.

2        75.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court,

3    there is no adequate remedy at law that can fully compensate Deckers for the harm

4    caused by Defendants' infringement, which is ongoing.    Accordingly, Deckers is

5    entitled to injunctive relief prohibiting Defendants from continuing to infringe the

6    Neumel Trade Dress, or any designs confusingly similar thereto.

7                            **FIFTH CLAIM FOR RELIEF**

8                **(Trade Dress Infringement– California Common Law)**

9        76.    Deckers incorporates by reference each and every one of the preceding

10   paragraphs as though fully set forth herein.

11       77.    Defendants' infringement of the Classic Ultra Mini Trade Dress, the

12   Tasman Trade Dress, Tazz Trade Dress, and Neumel Trade Dress also constitutes trade

13   dress infringement under common law of the state of California.

14       78.    The Accused Products manufactured, imported, distributed, advertised,

15   offered for sale, and/or sold by Defendants bear confusingly similar reproductions of

16   the Classic Ultra Mini Trade Dress, the Tasman Trade Dress, Tazz Trade Dress, and

17   Neumel Trade Dress such as to cause a likelihood of confusion as to the source,

18   sponsorship or approval by Deckers of the Accused Products.

19       79.    Defendants' unauthorized use of the Classic Ultra Mini Trade Dress, the

20   Tasman Trade Dress, Tazz Trade Dress, and Neumel Trade Dress has caused and is

21   likely to cause confusion as to the source of Accused Products among consumers.

22       80.    As a direct and proximate result of the foregoing acts, Deckers has suffered

23   and will continue to suffer significant injuries in an amount to be determined at trial.

24   Deckers is entitled to recover all damages, including attorneys' fees, that it has sustained

25   on account of Defendants' infringement, and all gains, profits and advantages obtained

26   by Defendants as a result of their unlawful acts.

27       81.    Defendants' unlawful acts were willful, deliberate, and intended to cause

28   confusion among the public, taken in reckless disregard of Deckers' rights.  As such, an

award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

82.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the damages caused by Defendants' infringement, which is ongoing. Accordingly, Deckers is entitled to injunctive relief prohibiting Defendants from continuing to infringe the Classic Ultra Mini Trade Dress, Tasman Trade Dress, Tazz Trade Dress, Neumel Trade Dress, or any designs confusingly similar thereto.

## SIXTH CLAIM FOR RELIEF

### (Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 *et. Seq.*)

83.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

84.    Defendants' misappropriation and unauthorized use of the Classic Ultra Mini Trade Dress, the Tasman Trade Dress, Tazz Trade Dress, and Neumel Trade Dress to promote the Accused Products is likely to confuse or mislead consumers into believing that such products are authorized, licensed, affiliated, sponsored, and/or approved by Deckers, constituting deceptive, unfair, and fraudulent business practices and unfair competition in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq*.

85.    Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the Classic Ultra Mini Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Classic Ultra Mini.

86.    Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the Tasman Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Tasman.

87.    Upon information and belief, Defendants' deceptive, unfair, and

fraudulent business practices were willfully undertaken with full knowledge of the Tazz Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Tazz.

88.    Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the Neumel Trade Dress and with the intent to misappropriate Deckers' goodwill and reputation established in the UGG® Neumel.

89.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

90.    Deckers is entitled to all available relief provided for under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*, including an accounting and disgorgement of all illicit profits that Defendants made on account of their deceptive, unfair, and fraudulent business practices.

91.    Furthermore, because Deckers has no adequate remedy at law for Defendants' ongoing unlawful conduct, Deckers is entitled to injunctive relief prohibiting Defendants from unfair competition.

## SEVENTH CLAIM FOR RELIEF

### (Unfair Competition – California Common Law)

92.    Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

93.    Defendants' misappropriation and unauthorized use of the Classic Ultra Mini Trade Dress, Tasman Trade Dress, Tazz Trade Dress, and Neumel Trade Dress to promote the Accused Products also constitutes unfair competition in violation of common law of the state of California.

94.    Deckers has expended substantial time, resources and effort in creating and developing UGG® footwear, including the UGG® Classic Ultra Mini, the embodiment of the Classic Ultra Mini Trade Dress; the UGG® Tasman, the embodiment of the Tasman Trade Dress, The UGG® Tazz, the embodiment of the Tazz Trade Dress, and

the ®UGG Neumel, the embodiment of the Neumel Trade Dress, which consumers recognize as originating from Deckers.

95.    Upon information and belief, Defendants introduced Accused Products into the stream of commerce in order to exploit Deckers' goodwill and the reputation established in the UGG® Classic Ultra Mini, the UGG® Tasman, the UGG® Tazz, and the UGG® Neumel, for Defendants' own pecuniary gain.

96.    Defendants' unauthorized use of the Classic Ultra Mini Trade Dress resulted in Defendants unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Classic Ultra Mini.

97.    Defendants' unauthorized use of the Tasman Trade Dress resulted in Defendants unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Tasman.

98.    Defendants' unauthorized use of the Tazz Trade Dress resulted in Defendants unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Tazz.

99.    Defendants' unauthorized use of the Neumel Trade Dress resulted in Defendants unfairly benefitting from Deckers' goodwill and the reputation established in the UGG® Neumel.

100.    Upon information and belief, Defendants' unlawful acts are willful, deliberate, and intended to cause confusion among the public and taken in reckless disregard of Deckers' rights.  As such, an award of exemplary and punitive damages is necessary in an amount sufficient to deter similar misconduct in the future.

101.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages, including attorneys' fees, that Deckers has sustained on account of Defendants' unfair competition, and all gains, profits and advantages obtained by Defendant as a result of its unlawful acts.  Furthermore, because Deckers has no adequate remedy at law for Defendants' ongoing unlawful conduct,

1    Deckers is entitled to injunctive relief prohibiting Defendant from unfair competition.

2    **EIGHTH CLAIM FOR RELIEF**

3    **(Patent Infringement – U.S. Pat. No. D927,161)**

4    102.   Deckers incorporates by reference each and every one of the preceding

5    paragraphs as though fully set forth herein.

6    103.   In order to protect its valuable brands, Deckers owns a number of patents

7    covering various styles of footwear it markets, including the UGG® Classic Ultra Mini

8    described herein.  These patents include U.S. Pat. No. D927,161 issued on August 10,

9    2021, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated

10   herein.

11   104.   Deckers is the owner by assignment of all rights, title and interest in and

12   to the '161 Patent issued in August 2021. Deckers marked substantially all footwear

13   products embodying the design of the '161 Patent with "Patent # D927,161", and/or via

14   virtual patent marking on a product label affixed to the footwear products embodying

15   the design of the '161 Patent in compliance with 35 U.S.C. § 287, as exemplified below,

16   putting Defendant on notice of the '161 Patent.



26   105.   Defendants have produced, imported into the U.S., distributed, advertised,

27   marketed, offered for sale, and/or sold within the United States the Accused Products

28   which bear a design substantially similar to the ornamental design of the '161 Patent,

in violation of 35 U.S.C. § 271.

106.    Deckers has not granted a license or given Defendants any form of permission to the '161 Patent and Defendants' infringement of the '161 Patent is without Deckers' permission or authority and in total disregard of Deckers' intellectual property rights.

107.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants under 35 U.S.C. §§ 284 and 289.

108.    Upon information and belief, Defendants' infringing acts were willful deliberate, and taken in reckless disregard of the '161 Patent despite having been put on notice through Deckers' patent marking because Defendants had knowledge of at least the UGG® Classic Ultra Mini which embodies the '161 Patent as evidenced by Defendants' comparison of the Accused Products and UGG® Classic Ultra Mini on Defendants' website offering the Accused Products. Defendant took these actions knowing the objectively high likelihood that such actions constituted infringement of the '161 Patent.



109.   Upon information and belief, Defendants' infringing acts were willful, deliberate, and taken in reckless disregard of the '161 Patent despite having been put on notice through Deckers' patent marking. Defendants took these actions knowing the objectively high likelihood that such actions constituted infringement of the '161 Patent.

110.   Upon information and belief, Defendants' infringing acts were and continue to be willful, deliberate, and taken in reckless disregard of the '161 Patent through Defendants' continued sale of Accused Products despite having been put on notice through Deckers' filing of this lawsuit. Defendant took these actions knowing that such actions constituted infringement of the '161 Patent.

111.   As Defendants' willful acts render this an exceptional case, Deckers is entitled to enhanced damages and reasonable attorney fees under 35 U.S.C. § 284.

112.   Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement of the '161 Patent, which is ongoing.  Accordingly, Deckers is entitled to injunctive relief under 35 U.S.C. § 283 prohibiting Defendants from continuing to infringe the '161 Patent.

## NINTH CLAIM FOR RELIEF

### (Patent Infringement – U.S. Pat. No. D790,186)

113.   Deckers incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

114.   In order to protect its valuable brands, Deckers owns a number of patents covering various styles. These patents include U.S. Pat. No. D790,186 issued on June 27, 2017, a true and correct copy of which is attached hereto as **Exhibit B** and incorporated herein.

115.   Deckers is the owner by assignment of all rights, title and interest in and to the '186 Patent issued in June 2017. As of the Fall 2018 season, pursuant to Deckers' processes, Deckers marked substantially all footwear products embodying the design of the '186 Patent with "Patent # D790,186", and/or via virtual patent marking on a

product label in compliance with 35 U.S.C. § 287 putting Defendants on notice of the '186 Patent.

116.    Defendants have produced, imported into the U.S., distributed, advertised, marketed, offered for sale, and/or sold within the United States the Accused Products which bear a design substantially similar to the ornamental design of the '186 Patent, in violation of 35 U.S.C. § 271.

117.    Deckers has not granted a license or given Defendants any form of permission to the '186 Patent and Defendants' infringement of the '186 Patent is without Deckers' permission or authority and in total disregard of Deckers' intellectual property rights.

118.    As a direct and proximate result of the foregoing acts, Deckers has suffered and will continue to suffer significant injuries in an amount to be determined at trial. Deckers is entitled to recover all damages sustained on account of Defendants' infringement, and all gains, profits and advantages obtained by Defendants under 35 U.S.C. §§ 284 and 289.

119.    Upon information and belief, Defendants' infringing acts were willful, deliberate, and taken in reckless disregard of the '186 Patent despite having been put on notice through Deckers' patent marking. Defendants took these actions knowing the objectively high likelihood that such actions constituted infringement of the '186 Patent.

120.    As Defendants' willful acts render this an exceptional case, Deckers is entitled to enhanced damages and reasonable attorney fees under 35 U.S.C. § 284.

121.    Furthermore, unless Defendants' unlawful acts are enjoined by this Court, there is no adequate remedy at law that can fully compensate Deckers for the harm caused by Defendants' infringement of the '186 Patent, which is ongoing.  Accordingly, Deckers is entitled to injunctive relief under 35 U.S.C. § 283 prohibiting Defendants from continuing to infringe the '186 Patent.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Deckers Outdoor Corporation respectfully prays for judgment against Defendants Project Cloud LLC, KC Exotic Rental, Inc. and DOES 1-10 as follows:

1.    A judgment that Defendants have infringed Deckers' Classic Ultra Mini Trade Dress, Tasman Trade Dress, Tazz Trade Dress, Neumel Trade Dress, the '161 Patent, and the '186 Patent;

2.    An order permanently enjoining and restraining Defendants, their agents, servants, employees, officers, associates, and all persons acting in concert with any of them from infringing Deckers' intellectual property at issue, including but not limited to infringing acts such as:

    a.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Classic Ultra Mini Trade Dress;

    b.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Tasman Trade Dress;

    c.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Tazz Trade Dress;

    d.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that bear an identical or confusingly similar design as Deckers' Neumel Trade Dress;

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

e.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that infringe Deckers' '161 Patent;

f.    manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling Accused Products or any other products that infringe Deckers' '186 Patent;

g.    engaging in any other activity constituting unfair competition with Deckers, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations and design elements used or owned by or associated with Deckers; and

h.    committing any other act which falsely represents or which has the effect of falsely representing goods and services of Defendant are licensed, authorized, offered, produced, sponsored, or in any other way associated with Deckers;

3.    An order requiring Defendants to recall from any distributors and retailers and to deliver to Deckers for destruction any Accused Products, including the means of making such products;

4.    An order requiring Defendant to file with this Court and serve on Deckers within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth the manner in which Defendants complied with the injunction;

5.    An order for an accounting of all gains, profits and advantages derived by Defendants on account of the unlawful acts complained of herein pursuant to 15 U.S.C. § 1117(a), Cal. Bus. & Prof. Code, § 17200 *et. seq*., and any other applicable federal statute or California state and common law;

6.    An award of damages equal to Defendants' profits and all damages sustained by Deckers as a result of Defendants' wrongful acts;

7.    An award of damages equal to treble Defendants' profits or Deckers' damages, whichever is greater, on account of Defendants' willful infringement;

8.     An award of punitive damages and Deckers' costs, attorneys' fees, and interest as allowed under all applicable federal statutes and California state laws; and

9.     All other relief that the Court may deem just and proper.

Dated:        July 9, 2025        **BLAKELY LAW GROUP**


By:        */s/ Jamie Fountain*
            Brent H. Blakely
            Jamie Fountain
            **Attorneys for Plaintiff**
            **Deckers Outdoor Corporation**

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Deckers Outdoor Corporation hereby demands a trial by jury as to all claims in this Civil Action.


Dated:        July 9, 2025        **BLAKELY LAW GROUP**


By:    /s/ Jamie Fountain_____
Brent H. Blakely
Jamie Fountain
**Attorneys for Plaintiff
Deckers Outdoor Corporation**